UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

CHERYL JEAN BEAVERS THOMAS )
)
V. ) NO. 2:12-CV-200
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security )

## REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation with regard to the Motions for Summary Judgment [Docs. 9 and 13] filed, respectively, by the plaintiff and the defendant Commissioner. This is an action for judicial review of the Commissioner's final decision denying the plaintiff's application for disability insurance benefits under the Social Security Act following a hearing before an Administrative Law Judge ["ALJ"].

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues

differently, the Commissioner's decision must stand if supported by substantial evidence. *Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was 46 years of age as of the date of her alleged onset of disability on July 14, 2007. She turned 50 years of age, a person "closely approaching advanced age," three days after the ALJ's hearing decision. She has a high school education. There is no disagreement that she cannot return to her past relevant work.

Plaintiff alleges both severe physical and mental impairments. Her medical history is summarized in the plaintiff's brief as follows:

> Plaintiff began treatment with Centerpointe Medical Clinic on January 9, 2004 (Tr. 282). The initial assessment was given as headaches, insomnia and anxiety (Tr. 282). Plaintiff presented back at this location on April 1, 2004 for follow-up and was assessed with hypertension and elevated lipids (Tr. 281). On May 25, 2004 she was seen at this location requesting assistance in smoking cessation and was assessed with tobacco abuse and low back pain (Tr. 280). On July 22, 2004 low back pain was reported with leg numbness when sitting. The assessment was given as low back pain and left lower extremity pain (LLE) (Tr. 279). Plaintiff reported back to this location on August 12, 2004 with continued low back pain and knee pain (Tr. 278). Similar pains were reported on November 11, 2004 for which she was given lortab and valium (Tr. 276). On January 7, 2005 Plaintiff continued follow-up with this location and reported headaches and was assessed with headaches and neck pain (Tr. 275). Insomnia and migraines were noted in the treatment notes from a subsequent visit on August 5, 2005 (Tr. 273). Depression and anxiety was additionally noted at this visit (Tr. 273). On November 3, 2005 Plaintiff's back pain was reported as improved with lortab (Tr. 272). However, on February 7, 2006 she again reported the back pain as chronic with continued migraines. Lortab and valium was again prescribed (Tr. 271). Left knee pain was reported during a May 5, 2006 treatment note (Tr. 270). Treatment was continued on February 5, 2007 with a new report noted of chest pressure (Tr. 269).
>
> On June 4, 2007, corresponding approximately to the July 14, 2007 alleged onset date

2

of disability, Plaintiff continued to report low back pain, but now complained of fatigue and tingling in her hands and feet (Tr. 268). On October 4, 2007 follow-up complaints of more back pain and left knee pain was reported (Tr. 267). Shoulder and back pain along with chest wall pain was reported on February 4, 2008 (Tr. 266). Muscle spasms were added to the assessments on June 3, 2008 (Tr. 265). On May 27, 2009 complaints continued of back, leg, arm chest, and shoulder pain with 14 out of 18 positive tender points for fibromyalgia (FMS) (Tr. 262).

Plaintiff was evaluated in the emergency room at Bristol Regional Medical Center for chest pains on December 27, 2006 (Tr. 244). Plaintiff reported the chest pains had been present for several weeks (Tr. 248). A radiological examination was performed and no acute cardiopulmonary disease was identified (Tr. 254). Plaintiff returned to this location on January 4, 2007 for cardiolite stress test for reported chest pressure going into the back of her neck (Tr. 241). The testing results were noted to be within normal limits with an ejection fraction of 74 percent (Tr. 231).

Plaintiff reported to Holston Valley Medical Center on October 6, 2007 for a MRI on the lumbar spine (Tr. 258). This examination revealed early degeneration of the L3-4 disc (Tr. 258). Plaintiff again returned to this location on August 20, 2008 for complaints of rectal bleeding (Tr. 260). A colonoscopy showed small internal hemorrhoids and large external hemorrhoids (Tr. 260).

Plaintiff continued treatment with Centerpointe Medical Clinic on May 26, 2010 (Tr. 401). Complaints of back, leg, arm, and shoulder pain remained consistent in follow-up notes dated September 24, 2010 with the assessment being thoracic back pain, low back pain, fibromyalgia (FMS) with trigger points noted on right traps, and leg pain (Tr. 402). Plaintiff continued to be prescribed Lortab (Tr. 402).

Plaintiff reported to the Hawkins County Health Department on January 4, 2010 and problems were noted to be diabetes type II, hyperlipidemia, and low back pain (Tr. 362). Her glucose was 165 (Tr. 377). She returned to this location on January 14, 2010 and noted her leg pain was improving but her back was not. Improved fasting glucose was given as an assessment along with low back pain with radiculitis, increased lipids and tobacco abuse (Tr. 370). On April 30, 2010 Plaintiff's blood sugar was reported as 149 along with an assessment of bronchitis, elevated blood sugar, back pain with radiculitis, and a suspicious lesion on her nose (Tr. 368). Her A1C was 6.8 (Tr. 375). Plaintiff followed up with this location on May 12, 2010 and noted the need for a meter and that her back pain was better with gabapenten (Tr. 365). Her A1C was noted to be 8.1 on May 23, 2011 (Tr. 441). On July 19, 2011 Plaintiff's diabetes was assessed as uncontrolled (Tr. 417). On October 6, 2011 Plaintiff reported to this location that she was experiencing an increase in neuropathic pain (Tr. 414). The assessment was noted as diabetes type II, hypertension, neuropathic pain / fibromyalgia (Tr. 415).

On July 7, 2009, Plaintiff attended a consultative examination with Steven Lawhon, Psy.D. (Tr. 298-301). This doctor noted affect and mood as depressed, she was unable to complete serial sevens, she did not recall common proverbs and was unable to discuss current events or spell the word "world" correctly backwards (Tr. 299). Diagnosis was given as dysthymic disorder along with a present Global Assessment of Function (GAF) of 60 and a past GAF of 70 (Tr. 300). Limitations were noted as being no more than mild.

Plaintiff was seen by Dr. Samual Breeding on July 16, 2009 for a physical

3

consultative examination (Tr. 302-304). The chief complaints were noted as back pain, sciatic nerve damage, anxiety, migraine headaches and fibromyalgia (Tr. 303-304). Associated with the fibromyalgia, was reports of pain in her legs, shoulders, arms, feet, and hips (Tr. 303). The physical examination revealed musculoskeletal tenderness in the trapezius bilaterally and in the thigh muscles bilaterally along with the flexion being sixty degrees and extension being fifteen degrees in the lumbar spine (Tr. 304). The Assessment was given as chronic low back pain, history of sciatic nerve injury, anxiety, and fibromyalgia (Tr. 304). This doctor opined to Plaintiff being able to lift thirty-five pounds occasionally, sitting four to six hours in an eight hour day, standing for four to six hours in an eight hour day, and Plaintiff needing to be able to sit or stand as needed (Tr. 304).

    On August 6, 2009, Dr. James P. Gregory, a Disability Determination Services (DDS) medical consultant, completed a physical residual functional capacity assessment (Tr. 305-313). This doctor opined to Plaintiff being able to lift twenty pounds occasionally, ten pounds frequently, stand and/or walk for about six hours in an eight hour day, and sit for about six of eight hours in an eight hour workday (Tr. 306). Occasional postural limitations were also noted in climbing ramps/stairs/ladders/rope/scaffolds, balancing, stooping, kneeling, crouching, and crawling (Tr. 307).

    On October 19, 2009, Karen Lawrence, Ph.D., completed a mental residual functional capacity assessment [hereinafter MRFC] and a psychiatric review technique form at the request of DDS (Tr. 329-332). This doctor opined to Plaintiff having moderate limitations in the following areas: ability to maintain attention and concentration for extended periods, ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, ability to interact appropriately with the general public, and ability to respond appropriately to changes in the work setting (Tr. 329-330). This doctor further noted Plaintiff was able to understand and remember simple one, two and three-step, and detailed instructions (Tr. 331). This doctor concluded with the opinion that Plaintiff could persist with simple and detailed tasks, maintain a consistent pace with a reasonable number and length of rest periods, maintain attention and concentration for at least two hours with standard breaks, relate to general public on an infrequent basis and could adapt to gradual, infrequent changes (Tr. 331).

[Doc. 10, pgs. 2-6].

At the administrative hearing on July 13, 2010, Dr. Theron Blickenstaff was called by the ALJ as a medical expert. Dr. Blickenstaff's testimony is summarized in the defendant's brief as follows:

> At the July 2010 administrative hearing, Dr. Theron Blickenstaff, a well-qualified and impartial medical expert, agreed with the earlier interpretations of Plaintiff's MRI (Tr. 45). Dr. Blickenstaff testified that Dr. Breeding's consultative examination

> in July 2009, revealed some decreased range of motion in the back and tenderness but otherwise, there were no significant abnormalities (Tr. 45). Dr. Blickenstaff testified that Plaintiff's diabetes was fairly mild (Tr. 45).
> He opined Plaintiff's severe impairment was early degenerative changes at L3-4 (Tr. 45). He agreed with Plaintiff's attorney that in the Centerpointe Medical records, there was a notation that Plaintiff had 14 out of 18 tender points for fibromyalgia (Tr. 24, 48). Dr. Blickenstaff testified that the nurse proposed these trigger points as a way to try and objectify the diagnosis of fibromyalgia (Tr. 24, 48). Dr. Blickenstaff testified that since there is a large subjective component to tenderness and a lack of standardization as to how exactly the examination is
> performed, it is somewhat controversial (Tr. 24, 48). Dr. Blickenstaff testified that the objective evidence in the record would call for physical limitations of lifting no more than 35 pounds occasionally and 15 pounds frequently (Tr. 46). Dr. Blickenstaff testified that any other limitations would depend on the credibility of the subjective complaints (Tr. 46).

[Doc. 14, pgs. 7-8].

In his hearing decision, the ALJ found at Step Two of the sequential evaluation process that the plaintiff had a severe impairment of Degenerative Disc Disease. He found that her diabetes was not a severe impairment. Based upon the treatment records and Dr. Blickenstaff's testimony, the ALJ also found that the plaintiff's allegations regarding her fibromyalgia did not cause significant functional limitations and were likewise not severe. He also found that her asserted mental impairment was not severe, based upon her activities, the assessment of Dr. Lawhon, and the opinion of State Agency physician Kupstas. (Tr. 23-25).

He found that the plaintiff possessed the residual functional capacity ["RFC"] to perform the full range of light work, without any exertional or nonexertional limitations. (Tr. 25). He discussed the reasoning for this determination by discussing whether or not the plaintiff was credible regarding the intensity, persistence, or functionally limiting effects of her pain, stating this was necessary because these complaints were "not substantiated by

5

objective medical evidence." He discussed her conservative treatment for her degenerative disc disease at Centerpointe and the MRI of her lumbar spine. Based upon the evidence, he stated that while her impairment could cause some degree of limitation and pain, the plaintiff's statements about the limiting effects of her symptoms "are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 26).

In explanation of this holding, the ALJ discussed the reports of Dr. Breeding, State Agency physician Dr. Gregory, and the testimony of Dr. Blickenstaff. Regarding Dr. Breeding, the ALJ gave "appropriate weight" to his opinion that supported the ALJ's light work RFC finding, but found "Dr. Breeding's findings of [a] sit stand option and sitting limitations less than 6 hours in an 8-hour day are inconsistent with the objective evidence and the record as a whole." With respect to Dr. Gregory, he likewise gave portions of his opinion "significant weight," but found that the postural limitations indicated by Dr. Gregory were "not supported by the totality of the record." As for Dr. Blickenstaff, the ALJ gave weight to his opinion of the plaintiff's ability to lift 35 pounds occasionally and 15 frequently, but noted that "Dr. Blickenstaff testified that any other limitations would depend on the credibility of the subjective complaints." (Tr. 27). He gave great weight to Dr. Blickenstaff, but found the plaintiff was limited to the full range of light work (lifting 20 pounds occasionally and 10 pounds frequently) to give "the benefit of every doubt to the claimant" in this regard. (Tr. 28).

He then further discussed his credibility finding, noting her examination results and that her condition was "managed" by medication and other conservative treatment. Other

than being limited to the full range of light work, he found no other limitations, and reiterated that plaintiff's complaints of "disabling pain and other disabling physical symptoms are not supported by the record as a whole." (Tr. 28).

After finding the plaintiff could not return to her past relevant work, he found that Rule 202.21 of the Medical-Vocational Guidelines, 20 CFR Ch. III, Pt. 404, Subpt. P, App. 2, indicated that she was not disabled. Based upon this, he found that the plaintiff was, in fact, not disabled.[1]

Plaintiff asserts that the ALJ "ignored" some key portions of the opinions of Dr. Breeding, State Agency physician Dr. Gregory, and of some of the State Agency psychologists, and that his RFC finding was thus not supported by substantial evidence. Plaintiff also asserts that the ALJ erred in his assessment of the plaintiff's credibility, and in not finding that her alleged fibromyalgia constituted a severe impairment.

The Court finds no fault with the ALJ's findings regarding that her mental impairment was not severe. There is substantial evidence to support his finding in this regard in the report of Dr. Lawhon (Tr. 298-300), and Dr. Kupstas (Tr. 324). In any event, for purposes of the sequential evaluation process, a simple failure to find a particular condition is severe at Step Two is harmless error if, as here, another impairment was found to be severe. *See, Maziarz v. Commissioner of H.H.S.*, 837 F.2d 240 (6th Cir. 1987). Of course, the ALJ has a duty to factor in even non-severe impairments if they affect the plaintiff's ability to engage

---

[1]Rule 202.21 applies to "younger individuals" (age 18-49) with plaintiff's educational and vocational experience. Even though she turned 50 three days after the ALJ's decision, thus becoming a person "closely approaching advanced age," Rule 202.14 would direct the same finding of "not disabled" for a person in that age group.

7

in substantial gainful activity, but as stated above, there is substantial evidence that the plaintiff has no more than mild mental impairments.

Likewise, the Court recognizes that it is the function of the ALJ, and an important one, to assess the credibility of the testimony of a claimant for Social Security disability benefits. It is unquestionably a determination which a reviewing court must respect.

In the present case, however, there is a direct link between the ALJ's credibility determination and the rejected portions of the reports of Dr. Breeding and Dr. Gregory. Dr. Breeding opined that the plaintiff had a need for a sit/stand option. Dr. Gregory did not find that, but did find that the plaintiff was limited to only occasional performance of several "postural" activities, such as climbing ramps and stairs, balancing, stooping, etc. (Tr. 307).

Dr. Breeding based his opinion upon his examination of the plaintiff, and some, but not all, of the plaintiff's medical records. Yes, he described the objective evidence as "minimal." Nonetheless, he stated that she "may need to sit or stand as needed for comfort." (Tr. 304). Such a restriction would preclude the full range of light work, relegate the use of the Medical-Vocational Guidelines to that of a "framework" for decision making, and require the use of a vocational expert ["VE"] to determine if there were jobs such a person could perform.

If there was another medical opinion that supported a finding that the plaintiff could, from a physical standpoint, perform the full range of light work, there would be no problem with the present adjudication. Or, if Dr. Blickenstaff as the medical expert at the hearing had testified she could perform a *full* range of light work, then there would quite arguably be substantial medical evidence to support the RFC finding. However, Dr. Blickenstaff did not

offer any such opinion. He stated instead "[o]ther limitations would depend on the credibility of the subjective claim."

Thus, we have (1) limitations opined by Dr. Breeding that would preclude a full range of light work; (2) limitations opined by Dr. Gregory that would do likewise; and (3) no comment by Dr. Blickenstaff. One can easily say with some degree of correctness that Dr. Blickenstaff was withholding any opinion because he did not want to usurp the ALJ's role as the finder of fact on the issue of credibility. But nonetheless, he did not offer any opinion that she did *not* have the limitations which the only other opining physicians, and the plaintiff herself, said she had.

When two doctors opine that the plaintiff has limitations that would preclude a full range of light work, and a third offers no opinion, then there is a total lack of substantial evidence that would support either the ALJ's RFC finding, or his finding regarding the plaintiff's lack of credibility insofar as it is consistent with the doctor's opinions.

As previously stated, if there was *any* medical opinion evidence that she could do the full range of light work, this would be a different situation. In this instance however, the Court concludes that there is not substantial medical evidence to support the ALJ in these critical aspects. The Commissioner's position is not substantially justified.

The Court likewise does not feel that the plaintiff has established a right to benefits. The Commissioner, on remand, can either make an RFC determination based on the existing medical evidence which does account for the opinions of Drs. Breeeding and Gregory and utilize a VE, or he can have the plaintiff further examined to clarify plaintiff's limitations. In any event, the Court respectfully recommends that this case be remanded to the

9

Commissioner for further resolution. It is therefore also recommended that the plaintiff's Motion for Summary Judgment [Doc. 9] be GRANTED, and that the defendant Commissioner's Motion for Summary Judgment [Doc. 13] be DENIED.[2]

       Respectfully submitted,

                               s/ Dennis H. Inman
                               United States Magistrate Judge

---

[2] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).